

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 02 2011

JAMES W. McCORMACK, CLERK
By: _____
DEP. CLERK

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**ARGONAUT GREAT CENTRAL INSURANCE COMPANY**                          **PLAINTIFF**

**VS.**                    **CASE NO. 4:11-CV-0206 BSM**

**JERRY CASEY; WENDY REYNA, as personal representative for the
ESTATE OF MARIA TERESA ORTEZ;
AMINTA ORTEZ; DAISY VILLEDAS;
RENEE ARMANDO ROSALES, as personal representative for the
ESTATE OF ANA DEL CARMEN ORTEZ;
MARIA HERNANDEZ, individually, and as mother and next of kin to
KILLIAM HERNANDEZ, KIMBERLY HERNANDEZ and
ASHLEYAMILCAR HERNANDEZ;
ANA ORTIZ; JOSE ESCALANTE; YOLANDA VELAZQUEZ;
JORGE DANIEL CERDA, individually, and as father and next of kin to
LIDANIA CERDA and EDREI CERDA; CARMEN FLORES;
CAROLINA GRANDE; MONICA ALVARADO;
CESAR ZELAYA; SONIA MARTINEZ, individually,
and as mother and next of kin to ABIGAIL MARTINEZ;
GLEN NOREGA; CLEMENTINA CISNEROS; ROSALINDA SILVA, individually and
as mother and next of kin to JOEL SILVA and JEREY SILVA;
JAIME BECERRA, individually, and as father and next of kin to
GWENDOLYN BECERRA, JOCELYN BECERRA, and BEATRIZ BECERRA;
BERTOBELIO MEJIA; LILIA MEJIA;
RUSSELLVILLE HOLDINGS, LLC d/b/a SAINT MARY'S REGIONAL MEDICAL CENTER;
WASHINGTON REGIONAL MEDICAL CENTER;
CLAY M. BERGER, D.C. d/b/a NATURAL HEALTHCARE CLINIC;
AIR EVAC EMS, INC. d/b/a AIR EVAC LIFETEAM;
ARKANSAS CHILDREN'S HOSPITAL;
QHG OF SPRINDALE, INC. d/b/a NORTHWEST MEDICAL CENTER OF WASHINGTON
COUNTY; HUMANA; JOHNSON REGIONAL MEDICAL CENTER; and
ARKANSAS STATE HIGHWAY AND
TRANSPORTATION DEPARTMENT**                          **DEFENDANTS**

### COMPLAINT IN INTERPLEADER

Comes the plaintiff, Argonaut Great Insurance Company, by its attorneys, Barber,

McCaskill, Jones & Hale, P.A., and for its Complaint in Interpleader, states:

*This case assigned to District Judge* _____
*and to Magistrate Judge* _____

## PARTIES

1.      Plaintiff is an Illinois corporation with its principal place of business in Peoria, Illinois. Plaintiff is licensed to do business in the State of Arkansas.

2.      Upon information and belief, defendant, Russellville Holdings, LLC d/b/a Saint Mary's Regional Medical Center is an Arkansas limited liability company with its principal place of business in Russellville, Arkansas.

3.      Upon information and belief, defendant, Washington Regional Medical Center is an Arkansas corporation with its principal place of business in Fayetteville, Arkansas.

4.      Upon information and belief, defendant, Clay M. Berger, D.C. d/b/a Natural Healthcare Clinic is an Arkansas resident.

5.      Upon information and belief, defendant, AirEvac EMS, Inc. d/b/a AirEvac Lifeteam is a Missouri corporation with its principal place of business in West Plains, Missouri.

6.      Upon information and belief, defendant, Arkansas Children's Hospital is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.

7.      Upon information and belief, defendant, QHG of Springdale, Inc. d/b/a Northwest Medical Center of Washington County is an Arkansas corporation with its principal place of business in Springdale, Arkansas.

8.      Upon information and belief, defendant, Humana, is a Kentucky corporation with its principal place of business in Lexington, Kentucky.

9.      Upon information and belief, defendant, Johnson Regional Medical Center is an Arkansas corporation with its principal place of business in Clarksville, Arkansas

10.     Upon information and belief, defendant, Arkansas Highway and Transportation Department is a branch of the Arkansas State government.

11.     The balance of the defendants are passengers or estates of passengers who were on the bus operated by the First Baptist Church of Bentonville when it was in an accident that resulted in personal injuries. Upon information and belief, the passenger defendants are residents of Benton County or were residents of Benton County at the time of the accident.

12.     The subject bus was owned and operated by the First Baptist Church of Bentonville, Arkansas, a non-profit Arkansas corporation which by virtue of its status as an eleemosynary or charitable entity is immune from suit.

## JURISDICTION AND VENUE

13.     This is an interpleader action brought pursuant to Rule 22 of the Federal Rules of Civil Procedure. This action involves a single-bus accident in London, Arkansas where the defendants identified in paragraph 13 of the Complaint were passengers or estates of passengers who were on the bus, and are asserting claims for personal injury. The defendants identified in paragraphs 2-10 of the Complaint have asserted liens as a result of benefits provided to the passengers. These claims are derivative of the passengers' claims.

14.     This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the claims are entirely between citizens, entities or subjects of different States and the amount in controversy exceeds $75,000.00

15.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action, the subject accident, occurred in this judicial district.

## FACTUAL ALLEGATIONS

16.     This action involves a single-bus automobile accident occurring on or about April 24, 2010 in London, Arkansas. The subject bus was owned and operated by the First Baptist Church of Bentonville, an unincorporated charitable entity.

17.     At the time of the accident, plaintiff had issued policy numbers BA – 9124636-04 and UMB 9124636-04 to the First Baptist Church of Bentonville, a charitable or eleemosynary entity otherwise immune from suit.   The former policy includes a liability clause with a maximum coverage amount of $1,000,000.00. The latter policy includes a liability clause with a maximum coverage amount of $1,000,000.00. *See* Certified Policies, attached hereto as Exhibits "1" and "2".

18.     The damages claimed by defendants will likely exceed available coverage, and plaintiff seeks to avoid multiple litigation and the potential for inconsistent and duplicative liability as defendants make claims for all, or part, of the policies' proceeds.

19.     Rule 22 of the Federal Rules of Civil Procedure permits a Court to receive a deposit of disputed funds into the registry of the Court, to discharge the stakeholder from all liability and to require those parties who claim an interest in these funds to interplead pursuant to Rule 22(a).

20.     Accordingly, plaintiff files this Complaint in Interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure.  Plaintiff is ready, willing, and able to deposit the policy proceeds referenced in paragraph 17 into the registry of the Court following entry of an appropriate Order.

21.     Pursuant to Rule 22 of the Federal Rules of Civil Procedure, Argonaut Great Central Insurance Company seeks an award of its litigation expenses, including attorneys' fees, in bringing this action.

22.     Outside of the expenses associated with bringing this action, Argonaut Great Central Insurance Company claims no monetary interest of any kind in the policies' proceeds to be deposited into the registry of the Court. Therefore, plaintiff should be discharged from any further participation in this action and upon interpleading the policies' sums, requests that it be discharged from any further liability to any of the defendants.

WHEREFORE, premises considered, the plaintiff, Argonaut Great Central Insurance Company, prays that the Court direct and authorize it to deposit the sum of $2,000,000.00 into the registry of this Court; that the Court discharge plaintiff from all further liability to these claimants for payment of claims under its policies; that the Court require defendants to litigate their claims for recovery under the policies in this forum, and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

BARBER, McCASKILL, JONES & HALE, P.A.
Attorneys for Plaintiff
400 W. Capitol, Suite 2700
Little Rock, AR 72201
(501) 707-6129/(501) 372-2802 (Fax)

By
Scott M. Strauss        AR BIN  92009
sstrauss@barberlawfirm.com
Jonathan E. Baker        AR BIN  08176
jbaker@barberlawfirm.com

01/14/2010 02:16 PM

BA 9124636-03
Renewal of Number*

**COMMERCIAL AUTO COVERAGE PART
BUSINESS AUTO DECLARATIONS**

CA 00 03 12 90

☒ The Declarations include a second part designated "Part 2."

Policy No. BA -9124636-04
**ITEM ONE**
Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)*
FIRST BAPTIST CHURCH OF BENTONVILLE
220 S MAIN ST
BENTONVILLE AR 72712



**GREAT CENTRAL**
Member Argo Group

**Argonaut Great Central Insurance Company**
3625 North Sheridan Road / P.O. Box 907 / Peoria, Illinois 61633-0001
309-688-8571 / Fax 309-688-2736
A STOCK COMPANY

Policy Period*: From    01/01/10    to    01/01/11    at 12:01 Standard Time at your mailing address shown above.
Form of Business:    ☐ Individual    ☐ Partnership    ☐ Corporation    ☒ Other UNINCORPORATED ASN
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
**ITEM TWO-SCHEDULE OF COVERAGES AND COVERED AUTOS**    This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos.) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | | PREMIUM |
|---|---|---|---|---|
| LIABILITY | 7,8,9 | $1,000,000 | | $497 |
| PERSONAL INJURY PROTECTION (P.I.P.)†† | | SEPARATELY STATED IN EACH P.I.P. END. MINUS $ | Deductible | $ |
| ADDED P.I.P. (or equivalent added No-fault cov.) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | | $ |
| PROPERTY PROTECTION INS. (P.P.I.) (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $    Deductible FOR EACH ACCIDENT | | $ |
| AUTO MEDICAL PAYMENTS | 7 | $5,000 | | $22 |
| UNINSURED MOTORISTS (UM) | 7 | $1,000,000 | | $52 |
| UNDERINSURED MOTORISTS (when not included in UM Cov.) | 7 | $INCLUDED | | $124 |
| COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS | $250 Ded. FOR EACH COVERED AUTO, BUT NO DED. APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. ††† | $146 |
| SPECIFIED CAUSES OF LOSS COVERAGE | | | $25 Deductible FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. ††† | $ |
| COLLISION COVERAGE | 7 | | $500 Deductible FOR EACH COVERED AUTO. ††† | $300 |
| TOWING AND LABOR (Not Available in California) | | $    for each disablement of a private passenger auto | | $ |

FORMS AND ENDORSEMENTS APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE†:
IL0231(4/98)IL0003(11/85)CA0001(7/97)IL0017(11/85)IL0021(11/85)CA9903(7/97)

| | |
|---|---|
| AGCCA002(5/97)CA0022(2/99)CA0162(6/98)CA2108(4/01)CA0038(12/02)CA2357(12/02) | PREMIUM FOR ENDORSEMENTS    $ |
| | ESTIMATED TOTAL PREMIUM    $1,141 |

**ITEM THREE-SCHEDULE OF COVERED AUTOS YOU OWN**    ††(or equivalent No-fault cov.)    †††See ITEM FOUR for hired or borrowed "autos."

| Covered Auto No. | DESCRIPTION Year Model; Trade Name; Body Type Serial Number (S); Vehicle Identification Number (VIN) | PURCHASED Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Covered Auto will be principally garaged |
|---|---|---|---|---|---|
| 1 | 2003 FORD BUS  1FDXE45S53HB01134 | $38,400 | | | BENTONVILLE AR |
| 2 | 2003 CHEVY BUS  1GBG5F1E03F515695 | $38,400 | | | BENTONVILLE AR |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

| Covered Auto No. | CLASSIFICATION | | | | | | | Except for towing all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of the loss. |
|---|---|---|---|---|---|---|---|---|
| | Radius of Operation (In Miles) | Business Use o=service r=retail c=commercial | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab.  Phy. Damage | Secondary Rating Factor | Code | |
| 1 | | | | 6 | | | 6354 | |
| 2 | | | | 6 | | | 6354 | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |

Countersigned:*

By    DYSON INSURANCE AGENCY  # 6089*
Authorized Representative

*Entry optional if shown in Common Policy Declarations.
†Form and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.
THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
A  1/8/10
JDL 190 (11)(1)-0-A (Ed. 12-90)
Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1990



EXHIBIT
1

Certified Copy

**01/14/2010 02:16 PM**

POLICY NUMBER: BA -9124636-04

CA 00 03 12 90   **PART 2**
**BUSINESS AUTO DECLARATIONS (Continued)**

**ITEM THREE (Cont'd)**

### COVERAGES-PREMIUMS, LIMITS AND DEDUCTIBLES
(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding **ITEM TWO** column applies instead)

| Covered Auto No. | LIABILITY Limit (in Thousands) | Premium | P.I.P. Limit minus deductible shown below | Premium | ADDED P.I.P. Limit Premium | P.P.I. (Mich. only) Limit minus deductible shown below | Premium | AUTO. MED. PAY. Limit (in thousands) | Premium | COMPREHENSIVE Limit minus deductible shown below | Premium | SPEC. CAUSES OF LOSS Limit** Premium | COLLISION Limit** minus deductible shown below | Premium | TOWING & LABOR Limit per disablement | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | $271 | | | | | | | $11 | | $58 | | | | $150 | |
| 2 | | $271 | | | | | | | $11 | | $58 | | | | $150 | |
| 3 | | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | | |
| Total Premium | $542 | XXX | | | XXX | | | XXX | $22 | XXX | $116 | | XXXX | $300 | XXX | |

Add'l Coverage(s)-Premium, Limit, Deductible: _____  *Limit stated in each applicable P.I.P. or P.P.I. Endorsement.  **Limit stated in ITEM TWO.

**ITEM FOUR-SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS. LIABILITY COVERAGE-RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (IF LIAB. COV. IS PRIMARY) | PREMIUM |
|---|---|---|---|---|
| AR | IF ANY | | | $131 |
| | | | | $ |
| | | | | $ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| | TOTAL PREMIUM | $131 |
|---|---|---|

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | | LIMIT OF INSURANCE THE MOST WE WILL PAY, DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH | $40,000 WHICHEVER IS LESS, MINUS $250 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING | | | $30 |
| SPECIFIED CAUSES OF LOSS | VALUE, COST OF | $ WHICHEVER IS LESS, MINUS $25 DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | $ |
| COLLISION | REPAIRS OR | $40,000 WHICHEVER IS LESS, MINUS $500 DEDUCTIBLE FOR EACH COVERED AUTO | | | $INCL |
| | | | | TOTAL PREMIUM | $30 |

**ITEM FIVE-SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 0-25 | $ |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | | $ |

**ITEM SIX-SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS-LIABILITY COVERAGE-PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | PREMIUMS | |
|---|---|---|---|---|
| ☐ Gross Receipts | ☐ Per $100 of Gross Receipts | | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
| ☐ Mileage | ☐ Per Mile | | | |
| | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS | | |
| | | | | |
| | | | | |
| | | | | |

| When used as a premium basis: | TOTAL PREMIUMS | |
| **FOR PUBLIC AUTOS** | MINIMUM PREMIUMS | |

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:
A.   Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.
B.   Advertising Revenue
C.   Taxes which you collect as a separate item and remit directly to a governmental division.
D.   C.O.D. collections for cost of mail or merchandise including collection fees.
Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.
**FOR RENTAL OR LEASING CONCERNS**
Gross Receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.
Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period.

A  1/8/10
(S)JDL 190(11)(2)-A (Ed. 12-90)          Includes copyrighted material of Insurance Service Office, Inc., with its permission. Copyright, Insurance Service Office, Inc., 1990

**COMPANY COPY**

**INTERLINE**
**IL 02 31 04 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the CANCELLATION Common Policy Condition is replaced by the following:

  **5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

  **b.** We will refund the pro rata unearned premium if the policy is:

    **(1)** Cancelled by us or at our request;

    **(2)** Cancelled but rewritten with us or in our company group;

    **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

    **(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

  **c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2)**, **(3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

  **d.** The cancellation will be effective even if we have not made or offered a refund.

  **e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

    **(1)** We will retain no less than $250 of the premium for the Boiler and Machinery Coverage Part, except for insurance provided under the Small Business Coverage Forms.

    **(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

    **(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

    **(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

**B.** The following is added to the CANCELLATION Common Policy Condition:

  **7. Cancellation of Policies In Effect More Than 60 Days**

    **a.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

 Copyright, Insurance Services Office, Inc., 1997

**(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**(3)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

**(4)** Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

**(5)** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

**(6)** A material violation of a material provision of the policy.

**b.** Subject to paragraph **7.c.**, if we cancel for:

**(1)** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

**(2)** Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

**c.** The following applies to the Commercial Auto Coverage Part:

**(1)** If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

**(2)** If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

     Copyright, Insurance Services Office, Inc., 1997     **IL 02 31 04 98**     □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESS AUTO COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY–NEW YORK

The following is added:

> The premium shown in the Declarations was computed based on rates in effect at the time the policy was is-
> sued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the
> premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

COMMERCIAL AUTO
CA 00 01 07 97

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

### B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5** or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

### C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

### 1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

### 2. Coverage Extensions

a. Supplementary Payments

   In addition to the Limit of Insurance, we will pay for the "insured":

   (1) All expenses we incur.

Copyright, Insurance Services Office, Inc., 1996     CA 00 01 07 97     ☐

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

      Copyright, Insurance Services Office, Inc., 1996      CA 00 01 07 97      □

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extension**

We will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

 Copyright, Insurance Services Office, Inc., 1996  □

**b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

   **a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

   **b.** Any other electronic equipment that is:

      **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

      **(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**C. Limit Of Insurance**

The most we will pay for "loss" in any one "accident" is the lesser of:

**1.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

Copyright, Insurance Services Office, Inc., 1996

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

### 2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

### 3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico; and

**d.** Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

### 8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Copyright, Insurance Services Office, Inc., 1996

CA 00 01 07 97   ☐

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand or order; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**F.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**G.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

 Copyright, Insurance Services Office, Inc., 1996 □

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**H.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**I.** "Loss" means direct and accidental loss or damage.

**J.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**K.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**L.** "Property damage" means damage to or loss of use of tangible property.

**M.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**N.** "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as "employee" absences, temporary skill shortages and seasonal workloads.

**O.** "Trailer" includes semitrailer.

Copyright, Insurance Services Office, Inc., 1996
CA 00 01 07 97   ☐

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

   **(a)** Any "nuclear reactor;"

   **(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**COMMERCIAL AUTO**
**CA 99 03 07 97**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident".  We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

          Copyright, Insurance Services Office, Inc., 1996                   □

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

 Copyright, Insurance Services Office, Inc., 1996 CA 99 03 07 97   □

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SEXUAL MISCONDUCT, SEXUAL ABUSE AND SEXUAL MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

Section B. Exclusions is amended to include the following:

**Sexual Misconduct, Sexual Abuse, Licentiousness or Sexual Molestation**

This insurance does not apply to any liability arising out of actual or alleged sexual misconduct, sexual abuse, licentiousness and/or sexual molestation, whether or not expected or intended, including without limitation, claims resulting from or arising out of negligent hiring, supervision, or transfer of, failure to supervise, or failure to dismiss any officer, employee or volunteer worker alleged to have committed any act of sexual misconduct, sexual abuse, licentiousness, or sexual molestation, nor do we have any duty to defend an insured in any "suit" seeking damages on account of such liability.

COMMERCIAL AUTO
CA 00 22 02 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES IN COMMERCIAL AUTO COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

## SECTION I – LOSS OF USE

### Changes In Physical Damage Coverage

**Coverage Extension** under Physical Damage Coverage is replaced by the following:

### Coverage Extensions

#### A. Transportation Expenses

We will pay up to $15 per day to a maximum of $450 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

#### B. Loss Of Use Expenses

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

1. Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

2. Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

3. Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $15 per day, to a maximum of $450.

## SECTION II – LIMITED WORLDWIDE COVERAGE FOR HIRED AUTOS

Paragraph **7. Policy Period, Coverage Territory** of the **General Conditions** is amended by the addition of the following:

The coverage territory is extended to anywhere in the world if:

a. A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

b. The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

## SECTION III – CHANGES IN DEFINITIONS

A. The definition of "insured contract" contained in **Section V – Definitions** of the Business Auto Coverage Form and **Section VI – Definitions** of the Motor Carrier and Truckers Coverage Forms is replaced by the following:

"Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   Copyright, Insurance Services Office, Inc., 1998     □

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

B. The definition of "insured contract" contained in **Section VI – Definitions** of the Garage Coverage Form is replaced by the following:

"Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your garage business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. An elevator maintenance agreement;

7. That part of any contract or agreement entered into, as part of your garage business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

1. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

a. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

b. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

2. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

3. That pertains to the loan, lease or rental of an "auto", to you or any of your "employees" if the "auto" is loaned, leased or rented with a driver; or

4. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority; or

5. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing.

   Copyright, Insurance Services Office, Inc.,  1998   CA 00 22 02 99   ☐

COMMERCIAL AUTO
CA 01 62 06 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Arkansas, the Coverage Form is changed as follows:

**A.** The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

**1.** If you and we disagree on the amount of "loss", either party may make a written request for an appraisal of the "loss". However, an appraisal will be made only if both you and we agree, voluntarily, to have the loss appraised. If so agreed, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**2.** If we submit to an appraisal, we will still retain our right to deny the claim.

**3.** An appraisal decision will not be binding on either party.

**B.** Physical Damage Coverage is changed as follows:

If collision coverage, comprehensive coverage or specified causes of loss coverage is provided by this coverage form on at least one covered "auto", then a temporary substitute vehicle is also a covered "auto". A temporary substitute vehicle means any "auto" you do not own which is provided for your use with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**1.** Breakdown;

**2.** Repair; or

**3.** Servicing.

**C.** **Changes In Conditions**

**1.** The **Other Insurance** Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following:

When this Coverage Form and any other Coverage Form or policy providing liability, physical damage, uninsured and underinsured motorists coverage apply to an "auto" and:

**a.** One provides coverage to an "insured" who is a duly licensed automobile dealer, and

**b.** The other provides coverage to a person not engaged in that business, and

at the time of an "accident", a person covered by a Coverage Form described in Paragraph **C.1.b.** is operating an "auto" provided by the business covered by a Coverage Form described in Paragraph **C.1.a.** as a temporary replacement or demonstrator "auto", while that person's "auto" is out of use because of its breakdown, servicing or repair, or has been offered and is being used as a demonstrator, then that person's liability, physical damage, uninsured and underinsured motorists coverage is primary and the Coverage Form issued to a business covered by a Coverage Form described in Paragraph **C.1.a.** is excess over any coverage available to the person covered by a Coverage Form described in Paragraph **C.1.b.**

 Copyright, Insurance Services Office, Inc., 1997 □

**2.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We will be entitled to recovery only after the "insured" has been fully compensated for the "loss" or damage sustained.

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 08 04 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Arkansas, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | |
| | (Authorized Representative) |

**SCHEDULE**

| Uninsured Motorists Coverage | "Bodily Injury" | $ | Each "Accident" |
|---|---|---|---|
| Underinsured Motorists Coverage | "Bodily Injury" | $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The definitions of "uninsured motor vehicle" and "underinsured motor vehicle" apply unless an "x" is entered below:

☐  If an "x" is entered in this box, only the definition of "uninsured motor vehicle" applies.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or the "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

    **a.** The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

**b.** A tentative settlement has been between an "insured" and the insurer of the "underinsured motor vehicle" and we:

**(1)** Have been given prompt written notice of such tentative settlement; and

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

However, this Paragraph **b.** does not apply if the "underinsured motor vehicle" is insured by us for Liability Coverage.

**3.** Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

**a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle".

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** "Bodily injury" under Uninsured Motorists Coverage, if that "bodily injury" is sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form.

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**4.** "Bodily injury" under Underinsured Motorists Coverage, if that "bodily injury" is sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form.

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form.

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**5.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**6.** Punitive or exemplary damages that are imposed by a court of law to:

**a.** Punish a wrongdoer; and

**b.** Deter others from similar conduct.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured And Underinsured Motorists Coverage shown in the Declarations.

© ISO Properties, Inc., 2000                   □

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

**E. Changes In Conditions**

The conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

**1. Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured or underinsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this coverage form is provided:

   **(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   **(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   **a.** Promptly notify the police if a hit-and-run driver is involved, and

   **b.** Promptly send us copies of the legal papers if a "suit" is brought.

   **c.** A person seeking Underinsured Motorists Coverage must also promptly notify us, in writing by certified mail-return receipt requested, of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

   Written notice of a tentative settlement must include:

   **(1)** Written documentation of monetary losses incurred, including copies of all medical bills;

   **(2)** Written authorization or a court order authorizing us to obtain medical reports from all employers and medical providers; and

   **(3)** Written confirmation from the insurer of the "underinsured motor vehicle" of the Liability Coverage limits of the owner or operator of the "underinsured motor vehicle".

   However, this Paragraph **c.** does not apply if the "underinsured motor vehicle" is insured by us for Liability Coverage.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if:

   **a.** The "underinsured motor vehicle" is insured by us for Liability Coverage; or

   **b.** The "underinsured motor vehicle" is not insured by us for Liability Coverage and we:

      **(1)** Have been given prompt written notice by certified mail-return receipt requested of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

 © ISO Properties, Inc., 2000  ☐

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

4. The following condition is added:

**ARBITRATION**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. However, arbitration will take place only if both we and the "insured" agree, voluntarily, to have the matter arbitrated. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. Any decision of the arbitrators will not be binding on either party.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

(1) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

(2) Owned by a governmental unit or agency; or

(3) Designed for use mainly off public roads while not on public roads.

4. "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides a limit that is less than the amount an "insured" is legally entitled to recover as damages caused by the "accident";

However, "underinsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

© ISO Properties, Inc., 2000    CA 21 08 04 01    □

COMMERCIAL AUTO
CA 00 38 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Liability Coverage

The War exclusion under Paragraph **B. Exclusions** of **Section II – Liability Coverage** is replaced by the following:

**WAR**

"Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## B. Changes In Garagekeepers Coverage

If the Garagekeepers Coverage endorsement or the Garagekeepers Coverage – Customers' Sound Receiving Equipment endorsement is attached, the following exclusion is added:

We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

**WAR**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## C. Changes In Auto Medical Payments

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.6.** is replaced by the following:

**6.** "Bodily injury", arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Changes In Uninsured/Underinsured Motorists Coverage

If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

**WAR**

**1.** "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

© ISO Properties, Inc., 2003

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**E. Changes In Personal Injury Protection Coverage**

    **1.** If Personal Injury Protection, no-fault, or other similar coverage is attached, and:

        **a.** Contains, in whole or in part, a War exclusion, that exclusion is replaced by Paragraph **2.**

        **b.** Does not contain a war exclusion, Paragraph **2.** is added.

    **2.** This insurance does not apply to:

**WAR**

"Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**F. Changes In Single Interest Automobile Physical Damage Insurance Policy**

The War exclusion is replaced by the following:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

 © ISO Properties, Inc.,  2003 CA 00 38 12 02   ☐

COMMERCIAL AUTO
CA 23 57 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined in any applicable Coverage Form or endorsement, arising directly or indirectly out of "a certified act of terrorism".

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, such as losses excluded by a Nuclear Hazard Exclusion or a War Or Military Action Exclusion.

GREAT CENTRAL
Member Argo Group

# ARGONAUT Great Central

## INSURANCE COMPANY
3625 North Sheridan Road / PO Box 807 / Peoria, IL 61633-0001 / 309.688.8571 / Fax 309.688.2738

This memorandum is a declaration only, and not a contract of insurance but attests that a policy as numbered herein, and as it stands at the date of this certificate, has been issued by the company. Said policy is subject to change by endorsement and to assignment and cancellation in accordance with its terms.

**A Stock Company**   ☐ NEW   ☒ RENEWAL OF   ☐ REWRITE
UMB 9124636-03

| Item | DECLARATIONS | POLICY NUMBER | UMB 9124636-04 |
|---|---|---|---|
| 1. | Name Insured and Mailing Address<br><br>FIRST BAPTIST CHURCH, BENTONVILLE<br>220 S MAIN ST<br>BENTONVILLE, AR 72712 | | |

| 2. | POLICY PERIOD: 1 YEAR(S) FROM | 01-01-2010 | TO | 01-01-2011 | AT 12:01 AM STANDARD<br>at the address shown above |
|---|---|---|---|---|---|

| 3. | POLICY PREMIUM: | $818 | (This premium may be subject to adjustment) |
|---|---|---|---|

| 4. | LIMITS OF INSURANCE: The limit of Argonaut Great Central's Liability shall be as stated herein, subject to all the terms of the policy having reference thereto. | |
|---|---|---|
| | EACH OCCURRENCE LIMIT | $1,000,000 |
| | GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS - COMPLETED OPERATIONS) | $1,000,000 |
| | PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | $1,000,000 |

| 5. | RETAINED LIMIT: | $10,000 | | EACH OCCURRENCE |
|---|---|---|---|---|

| 6. | SCHEDULE OF UNDERLYING INSURANCE | | | |
|---|---|---|---|---|
| | Policy No. & Term | Insurer | Desc. of Coverage | Limits of Insurance |
| | BA912463604<br>01-01-2010 to 01-01-2011 | ARGONAUT GREAT CENTRAL<br>INSURANCE COMPANY | BUSINESS AUTO | $1,000,000 ea. occ. |
| | RI912463604<br>01-01-2010 to 01-01-2011 | ARGONAUT GREAT CENTRAL<br>INSURANCE COMPANY | PREMISES/OPERATIONS | $1,000,000 ea. occ.<br>$3,000,000 gen. aggr. |
| | | | PRODUCTS | $1,000,000 ea. occ.<br>$1,000,000 gen. aggr. |
| | | | EMPL BENEFIT LIABILITY | $1,000,000 ea. occ.<br>$1,000,000 aggr. |
| | WC912463604<br>01-01-2010 to 01-01-2011 | ARGONAUT GREAT CENTRAL<br>INSURANCE COMPANY | EMPLOYERS LIABILITY | $500,000 pol. lim.<br>$500,000 ea. emp.<br>$500,000 ea. acc. |

## FORMS AND ENDORSEMENTS
AGC-CU-007 (7-97), AGC-CU-032 (8-99), AGC-CU-063 (7-97), AGC-CU-064 (7-97), AGC-CU-078 (8-97), AGC-CU-083 (7-97), AGC-CU-042 (8-97), AGC-CU-043 (7-97), AGC-CU-074 (7-97), AGC-CU-079 (7-97)

| **DATE** | **AGENCY LOCATION** | **RESIDENT AGENT** |
|---|---|---|
| 12-21-2010 | 103 NORTH FORK DRIVE<br>SHERWOOD, AR 72120 | DYSON INSURANCE AGENCY #6089 |



EXHIBIT
2

Certified Copy

AGC-CU-747 (7/97)

This **memorandum** is for information only. It is not a condition or issue, and the original policy as numbered herein, and as it stands at the date of this certificate, has been issued by the company. Said policy is subject to change by endorsement and to assignment and cancellation in accordance with its terms.

**Argonaut Great Central Insurance Company**
3625 North Sheridan Road / P.O. Box 807 / Peoria, Illinois 61633-0001/309-688-8571 / Fax 309-688-2738

| POLICY NO: | UMB 9124636-04 |
|---|---|

**ADDITIONAL DECLARATIONS**

The following declarations apply to forms, endorsements and supplements attached at the inception of the policy.

Limits of Insurance

AGC-CU-007    (07-97)  ARKANSAS CHANGES - CANCELLATION

AGC-CU-032    (08-99)  COMMERCIAL UMBRELLA LIABILITY POLICY

AGC-CU-063    (07-97)  PROPERTY DAMAGE EXCLUSION - PERSONAL PROPERTY

AGC-CU-064    (07-97)  PROPERTY DAMAGE EXCLUSION - REAL PROPERTY

AGC-CU-078    (08-97)  ABUSE OR MOLESTATION ENDORSEMENT

AGC-CU-083    (07-97)  EMPLOYMENT DISCRIMINATION AND EMPLOYMENT-RELATED PRACTICES EXCLUSION

AGC-CU-042    (08-97)  EMPLOYEE BENEFITS LIABILITY LIMITATION ENDORSEMENT AND ERISA EXCLUSION

AGC-CU-043    (07-97)  EMPLOYERS' LIABILITY FOLLOWING-FORM ENDORSEMENT

AGC-CU-074    (07-97)  DESIGNATED PROFESSIONAL SERVICES EXCLUSION
                                    SCHEDULE
                NURSES, IF ANY

AGC-CU-079    (07-97)  CORPORAL PUNISHMENT

GP-ISO-744 (4/96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES - CANCELLATION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Paragraph 5. of the Cancellation Condition is replaced by the following:

**(5) (a)** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**(b)** We will refund the pro rata unearned premium if the policy is:

**(i)** Cancelled by us or at our request;

**(ii)** Cancelled but rewritten with us or in our company group; or

**(iii)** Cancelled because you no longer has an insurable interest in the property or business operation that is the subject of this insurance.

**(c)** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in b.(2), (3) or (4) above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

**(d)** The cancellation will be effective even if we have not made or offered a refund.

**(e)** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium.

**B.** The following is added to the Cancellation Condition

**(7) Cancellation Of Policies In Effect For 60 Days Or More**

**(a)** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

**(i)** Nonpayment of premium;

**(ii)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy.

**(iii)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

AGC-CU-007 (7-97)        Argonaut Great Central Insurance Company        Page 1 of 2
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1984

    **(iv)** Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

    **(v)** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

    **(vi)** A material violation of a material provision of the policy.

**(b)** Subject to paragraph 7c., if we cancel for:

    **(i)** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured at least 10 days before the effective date of cancellation.

    **(ii)** Any other reason, we will mail or deliver notice of cancellation to the first Named Insured at least 20 days before the effective date of cancellation.

Argonaut Great Central Insurance Company     AGC-CU-007 (7-97)

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission

Copyright, Insurance Services Office, Inc., 1991

# COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions of this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION IV).

Other words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS (SECTION VI).

## SECTION I - INSURING AGREEMENT

In consideration of the payment of premium, and subject to all the exclusions, terms and conditions of this policy, we agree with you as follows:

**a.**   We will pay on behalf of the insured all sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "injury" to which this policy applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under DEFENSE AND SUPPLEMENTARY PAYMENTS (SECTION II).

This insurance applies only to the following "injury:"

**(1)**   "Bodily injury" or "property damage:"

**(a)**   occurring in the "coverage territory" during the policy period; and

**(b)**   caused by an "occurrence;" and

**(2)**   "Personal injury:"

**(a)**   committed in the "coverage territory" during the policy period; and

**(b)**   caused by an "offense;" and

**(c)**   arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

**(3)**   "Advertising injury:"

**(a)**   committed in the "coverage territory" during the policy period; and

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

       **(b)**   caused by an "offense;" and

       **(c)**   committed in the course of advertising your goods, products or services.

**b.**   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**c.**   "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

**d.**   The amount we will pay for damages is limited as described in "RETAINED LIMIT" AND LIMITS OF INSURANCE (SECTION V).

## SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS

**a.**   Defense of Claims or "Suits"

       **(1)**   We have no duty to defend any claim or "suit" that any other insurer has a duty to defend.  However, we have the right to join in the defense or trial of any claim or "suit" that another insurer has a duty to defend if we believe the claim or "suit" may create liability under this policy.  If we avail ourselves of this right, we will pay any expense we incur.

       **(2)**   We will defend any claim or "suit" against an insured seeking damages because of "injury" to which this policy applies (including any claim or "suit" for damages wholly or partly within your "retained limit") only when:

             **(a)**   the "injury" is covered under this policy but not covered under any "underlying insurance;" or

             **(b)**   the "underlying insurance" has been exhausted by the payment of claims.

       In countries other than the United States of America, including its territories and possessions, Puerto Rico or Canada, we may decide not to investigate, settle or defend an insured because of laws or other reasons.  Anytime we elect not to investigate, settle or defend, at our request and subject to our supervision and control, you will make or cause to be made such investigation and defense as are reasonably necessary.  You will make, to the extent possible, such settlements as we deem prudent.  We will pay any expense incurred with our written consent for the insured's defense.

       **(3)**   We may settle any claim or "suit" (including any claim or "suit" for damages wholly or partly within your "retained limit") as we see fit.  You will promptly reimburse us if we pay an amount that is within your "retained limit."

       **(4)**   We have no obligation to defend any existing or future claim or "suit" once the applicable limit of insurance has been exhausted by the payment of judgments or settlements.

            Argonaut Great Central Insurance Company        AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**b.**   Supplementary Payments

We will pay, with respect to any claim or "suit" we defend or which we request you to make or cause to be made investigation and defense, for:

**(1)**   all expenses we incur.

**(2)**   the cost of appeal bonds and bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**(3)**   all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

**(4)**   all costs taxed against the insured in the "suit."

**(5)**   pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

**(6)**   all interest on the full amount of any judgment that occurs after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION III - EXCLUSIONS

This insurance does not apply to:

**a.**   "Bodily injury" or "property damage" expected or intended from the standpoint of an insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.**   "Bodily injury," "property damage," "personal injury" or "advertising injury" for which an insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**   assumed in a contract or agreement that is an "insured contract" provided the "bodily injury," "property damage," "personal injury" or "advertising injury" occurs subsequent to the execution of the contract or agreement; or

**(2)**   that an insured would have in the absence of the contract or agreement.

**c.**   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)**   causing or contributing to the intoxication of any person;

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**(2)**   the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)**   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.**   Any obligation of an insured, or any of the insured's insurers, under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.**   "Bodily injury" to:

**(1)**   an employee of an insured arising out of and in the course of employment by an insured; or

**(2)**   the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

**(1)**   whether an insured may be liable as an employer or in any other capacity; and

**(2)**   to any obligation to share damages with or repay someone who must pay damages because of the "bodily injury."

This exclusion does not apply to liability assumed by an insured under an "insured contract."

**f.**   **(1)**   "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)**   at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)**   at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)**   which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)**   at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)**   if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

Argonaut Great Central Insurance Company           AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**(ii)**   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)**   Any loss, cost, or expense arising out of any:

**(a)**   request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

**(b)**   claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**g.**   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This exclusion does not apply to:

**(1)**   a watercraft while ashore on premises you own or rent;

**(2)**   a watercraft you do not own that is:

**(a)**   less than 26 feet long; and

**(b)**   not being used to carry persons or property for a charge; or

**(3)**   liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

If coverage for "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "auto" owned or operated by or rented or loaned to any insured is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance, for the full limits shown therein, this exclusion does not apply to such liability for which coverage is afforded under said underlying insurance.

**h.**   "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

**i.**   "Property damage" to "your product" arising out of it or any part of it.

**j.**   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**k.**   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

  **(1)**   a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

  **(2)**   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**l.**   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

  **(1)**   "your product;"

  **(2)**   "your work;" or

  **(3)**   "impaired property;"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**m.**   "Personal injury" or "advertising injury:"

  **(1)**   arising out of oral or written publication of material, if done by or at the direction of an insured with knowledge of its falsity;

  **(2)**   arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

  **(3)**   arising out of the willful violation of a penal statute or ordinance committed by or with the consent of an insured; or

Argonaut Great Central Insurance Company            AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

(4) for which an insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract or agreement.

**n.** "Advertising injury" arising out of:

**(1)** breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** the failure of goods, products or services to conform with advertised quality or performance;

**(3)** the wrong description of the price of goods, products or services; or

**(4)** an offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**o.** "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

(1) The inhalation of, ingestion of, or prolonged physical exposure to asbestos or goods or products containing asbestos;

(2) The use of asbestos in constructing or manufacturing any good, product or structure;

(3) The removal of asbestos from any good, product or structure; or

(4) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

## NUCLEAR ENERGY LIABILITY EXCLUSION

**a.** This insurance does not apply:

**(1)** under any Liability Coverage, to "bodily injury" or "property damage:"

**(a)** with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(b)** resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(2)** under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

AGC-CU-032 (8-99)        Argonaut Great Central Insurance Company        Page 7 of 24
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

(a)   the "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(b)   the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)   the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada,

this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

**b.**   As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear facility" means:

(1)   any "nuclear reactor;"

(2)   any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel" or (c) handling, processing or packaging "waste;"

(3)   any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear material" means "source material," "special nuclear material" or "by-product material;"

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Argonaut Great Central Insurance Company          AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

## SECTION IV - WHO IS AN INSURED

**a.**   If you are designated in the Declarations as:

**(1)**   an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)**   a partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)**   an organization other than a partnership or joint venture, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

**b.**   Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest will be deemed to be a Named Insured.  However:

**(1)**   coverage under this policy will be excess over any other excess or umbrella coverage (except for insurance specifically purchased to be quota share or excess of this insurance) afforded to the newly acquired or formed organization; and

**(2)**   coverage does not apply to:

**(a)**   "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(b)**   "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

**c.**   Except with respect to the "auto hazard," each of the following is also an insured:

**(1)**   your employees, other than your executive officers, but only for acts within the scope of their employment by you.  However, no employee is an insured for:

**(a)**   "bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of the co-employee as a consequence of such "bodily injury" or "personal injury," or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

    **(b)**  "bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

    **(c)**  "property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

**(2)**  any person (other than your employee) or any organization while acting as your real estate manager.

**(3)**  any person or organization having proper temporary custody of your property if you die, but only:

    **(a)**  with respect to liability arising out of the maintenance or use of that property; and

    **(b)**  until your legal representative has been appointed.

**(4)**  your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**(5)**  except with respect to newly acquired or formed organizations, any person or organization for whom you have agreed in writing prior to injury to provide insurance but only with respect to operations performed by you or on your behalf, or premises owned or used by you. This policy shall not afford such person or organization limits of liability in excess of:

    **(a)**  the minimum limits of insurance which you agreed to provide; or

    **(b)**  the limits of insurance of this policy;

    whichever is less.

**(6)**  any person or organization qualifying as an "insured" in any "underlying insurance" subject to the following limitations:

    **(a)**  the person or organization is insured only for damages:

        **(i)**  which are covered by this policy; and

        **(ii)**  which are covered by the "underlying insurance" or which would be covered but for the exhaustion of its limits; and

    **(b)**  the limits of insurance afforded to such person or organization will be:

        **(i)**  the minimum limits of insurance which you agreed to provide; or

        **(ii)**  the limits of insurance of this policy;

        whichever is less.

Argonaut Great Central Insurance Company    AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**d.**   With respect to the "auto hazard," each of the following is an insured:

    **(1)**   any person or organization qualifying as an insured as respects "auto" liability in the "underlying insurance," other than those persons or organizations added as additional insureds by endorsement; and

    **(2)**   any person or organization added as an additional insured by endorsement as respects "auto liability" in the "underlying insurance" subject to the following limitations:

        **(a)**   this policy must be shown on a certificate of insurance issued by us or our agent naming the person or organization as an insured;

        **(b)**   the person or organization is insured only for damages to which the "underlying insurance" would apply but for the exhaustion of its limits; and

        **(c)**   the limits of insurance afforded to such person or organization will be:

            **(i)**   the limits of insurance shown on a certificate of insurance issued to the person or organization by us or our agent; or

            **(ii)**   the limits of this policy;

        whichever is less.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION V - "RETAINED LIMIT" AND LIMITS OF INSURANCE

Regardless of the number of:

**a.**   "insureds,"

**b.**   persons or organizations who sustain injury, or

**c.**   claims made or "suits" brought on account of any "injury,"

our liability is limited as follows:

    **(1)**   "Retained Limit"

    When an applicable aggregate limit of insurance in the "underlying insurance" has been used up by the payment of judgments, settlements, costs or expenses, the insurance afforded by this policy will drop down and apply in excess of the exhausted aggregate limit of insurance of the "underlying insurance." Any payment we make when this policy drops down to apply in excess of an exhausted aggregate limit of insurance is included within and not in addition to the Limits of Insurance of this policy.

In any instance other than when an applicable aggregate limit of insurance in the "underlying insurance" has been used up by the payment of judgments, settlements, costs or expenses, the insurance afforded by this policy will apply only to the amount of damages in excess of the applicable "retained limit."

The "retained limit" will apply separately to each "occurrence" to which this insurance applies.

If the "retained limit" applicable to an "occurrence" is not satisfied by "underlying insurance," we have the right but not the duty to pay any part or all of the "retained limit" in settlement of any claim or "suit" or in satisfaction of any judgment.  Upon notice of such payment, you will promptly reimburse us.

**(2)**  Limits of Insurance

    **(a)**  The Each Occurrence Limit is the most we will pay because of "bodily injury," "property damage," "personal injury" and "advertising injury" arising out of any one "occurrence."

    **(b)**  The General Aggregate Limit is the most we will pay for damages except for damages because of:

        **(i)**  "bodily injury" and "property damage" included in the "products-completed operations hazard;" and

        **(ii)**  "bodily injury" and "property damage" included in the "auto hazard."

    **(c)**  The Products-Completed Operations Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

    **(d)**  The Limit of Insurance applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## SECTION VI - DEFINITIONS

**a.**  "Advertising injury" means injury arising out of one or more of the following "offenses:"

    **(1)**  oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **(2)**  oral or written publication of material that violates a person's right of privacy;

    **(3)**  misappropriation of advertising ideas or style of doing business; or

    **(4)**  infringement of copyright, title or slogan.

**b.**  "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment."

Argonaut Great Central Insurance Company                AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**COMMERCIAL UMBRELLA**

**c.**   "Auto hazard" means "bodily injury" and "property damage" arising out of the ownership, maintenance or use of any "auto," but only for damages to which the "underlying insurance" would apply but for the exhaustion of its limits.

**d.**   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" also includes disability, mental anguish, mental injury, humiliation, shock or fright resulting in or from otherwise covered "bodily injury."

**e.**   "Coverage territory" means anywhere in the world

**f.**   "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**(1)**   it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**(2)**   you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)**   the repair, replacement, adjustment or removal of "your product" or "your work;" or

**(2)**   your fulfilling the terms of the contract or agreement.

**g.**   "Injury" means "bodily injury," "property damage," "advertising injury" and "personal injury."

**h.**   "Insured contract" means:

**(1)**   a lease of premises;

**(2)**   a sidetrack agreement;

**(3)**   any easement of license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**(4)**   an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**(5)**   an elevator maintenance agreement; or

**(6)**   that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**(1)** that indemnifies any person or organization for "bodily injury" or "property damage" arising out of the construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** preparing, approving or failing to approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    **(b)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services; or

**(4)** that indemnifies any person or organization for damage by fire to premises rented or loaned to you.

**i.** "Loading or unloading" means the handling of property:

**(1)** after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

**(2)** while it is in or on an aircraft, watercraft or "auto;" or

**(3)** while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

but "loading or unloading" does not include the movement of property by means of mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**j.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**(1)** bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

**(2)** vehicles maintained for use solely on or next to premises you own or rent;

**(3)** vehicles that travel on crawler treads;

**(4)** vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(a)** power cranes, shovels, loaders, diggers or drills; or

    **(b)** road construction or resurfacing equipment such as graders, scrapers or rollers;

Argonaut Great Central Insurance Company          AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

   (3) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person rents or leases by or on behalf of its owner, landlord or lessor;

   (4) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   (5) oral or written material that violates a person's right of privacy.

**n.** (1) "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (a) products that are still in your physical possession; or

   (b) work that has not yet been completed or abandoned.

  (2) "Your work" will be deemed completed at the earliest of the following times:

   (a) when all of the work called for in your contract has been completed.

   (b) when all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (c) when that part of the work done at a job site has been put to its intended use by the person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  (3) this hazard does not include "bodily injury" or "property damage" arising out of:

   (a) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

   (b) the existence of tools, uninstalled equipment or abandoned or unused materials; or

   (c) products or operations for which the classification in our manual or rules includes products or completed operations.

**o.** "Property damage" means:

  (1) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  (2) loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   Argonaut Great Central Insurance Company   AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

(5)   vehicles not described in (1), (2), (3) or (4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (a)   air compressor, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

    (b)   cherry pickers and similar devices used to raise or lower workers; or

(6)   vehicles not described in (1), (2), (3) or (4) above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

    (a)   equipment designed primarily for:

        (i)   snow removal;

        (ii)   road maintenance, but not construction or resurfacing;

        (iii)   street cleaning

    (b)   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (c)   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**k.**   "Occurrence" means:

(1)   with respect to "bodily injury" and "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

(2)   with respect to "personal injury" and "advertising injury," all damages sustained by any one person or organization.

**l.**   "Offense" means any of the offenses listed in the definition of "personal injury" or "advertising injury."

**m.**   "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following "offenses:"

(1)   false arrest, detention or imprisonment;

(2)   malicious prosecution;

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**p.**   "Retained limit" means:

    **(1)**   If the "underlying insurance" applies to the "injury," the greater of:

        **(a)**   the total limit of insurance stated in Item 6 of the Declarations; or

        **(b)**   the "retained limit" shown in Item 5 of the Declarations.

    **(2)**   If the "underlying insurance" does not apply to the "injury," the amount stated in Item 5 of the Declarations as the "retained limit."

**q.**   "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged.  "Suit" includes:

    **(1)**   an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    **(2)**   any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**r.**   "Underlying insurance" means:

    **(1)**   the policies listed in Item 6 of the Declarations, including any renewal or replacement of such policies; and

    **(2)**   any other insurance available to the insured except insurance purchased specifically to be either quota share with or excess of this policy.

As respects newly acquired or formed organizations, the limits of "underlying insurance" will be the greater of the limits shown in Item 6 of the Declarations for the acquiring organization or the limits available to the newly acquired or formed organization.

**s.**   "Underlying insurer" means the provider of any "underlying insurance."

**t.**   "Your product" means:

    **(1)**   any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**   you;

        **(b)**   others trading under your name; or

        **(c)**   a person or organization whose business or assets you have acquired; and

(2)     containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

(1)     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

(2)     the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

u.     "Your work" means"

(1)     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

(2)     the providing of or failure to provide warnings or instructions.

## SECTION VII - CONDITIONS

a.     **Appeals**

If the insured or any other insurer elects not to appeal a judgment which exceeds the "retained limit," we may do so.  If we appeal the judgment, we will pay the cost and interest incidental to the appeal. Any amounts recovered will be applied as follows:

(1)     first, to our costs and expenses in pursuing the appeal;

(2)     second, to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under the policy;

(3)     then, to reimburse us for all amounts paid under the policy; and

(4)     finally, to reimburse all other interests (including the insured) with respect to residue, if any.

b.     **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligation under this policy.

c.     **Cancellation**

(1)     The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**(2)**   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(a)**   10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   **(b)**   30 days before the effective date of cancellation if we cancel for any other reason.

**(3)**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**(4)**   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

**(5)**   If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**(6)**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**d.   Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**e.   Changes in "Underlying Insurance"**

The first Named Insured shown in the Declarations must give us written notice as soon as practicable if the coverage or limits of insurance afforded in the "underlying insurance" is changed or any coverage in the "underlying insurance" is terminated.

If the first Named Insured fails to comply with the above, this insurance is not invalidated.  However, in the event of loss, we will pay only to the extent that we would have paid had you so complied.

**f.   Duties in the Event of "Occurrence," "Offense," Claim or "Suit"**

**(1)**   You must see to it that we are notified as soon as practicable of an "occurrence" or an "offense" which may result in damages payable by this policy.  To the extent possible, notice should include:

   **(a)**   how, when and where the "occurrence" or "offense" took place;

   **(b)**   the names and addresses of any injured persons and witnesses; and

   **(c)**   the nature and location of any injury or damage arising out of the "occurrence" or "offense."

**(2)**   If claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must:

       **(a)**    immediately record the specifics of the claim or "suit" and the date received; and

       **(b)**    notify us as soon as practicable.

    You must see to it that we receive written notice of claim or "suit" as soon as practicable.

**(3)**    You and any other involved insured must:

       **(a)**    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

       **(b)**    authorize us to obtain records and other information; and

       **(c)**    cooperate with us in the investigation, settlement or defense of the claim or "suit."

**(4)**    With respect to any "occurrence," "offense," claim or "suit" that may result in a claim under this insurance, you and any other insured must:

       **(a)**    cooperate with the "underlying insurers;"

       **(b)**    comply with the terms of the "underlying insurance;"

       **(c)**    pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "injury" with respect to which insurance is provided under this or any policy of "underlying insurance;"

       **(d)**    not admit liability or jeopardize our rights after an "occurrence" or "offense;" and

       **(e)**    not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**g.**    **Examination of Your Books and Records**

    We may examine and audit your books and records as they may relate to this policy at any time during the policy period and up to three years afterward.

**h.**    **Exhaustion of Aggregate Limits in Underlying Insurance**

    The first Named Insured shown in the Declarations must immediately give us written notice when an aggregate limit in any "underlying insurance" has been used up by the payment of judgments, settlements, costs or expenses.

    If the first Named Insured fails to comply with the above, this insurance is not invalidated. However, in the event of loss, we will pay only to the extent that we would have paid had you so complied.

       Argonaut Great Central Insurance Company        AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**i.   Exhaustion of Limits of Insurance**

As soon as the limit of insurance stated on the Declarations as the General Aggregate Limit or the Products-Completed Operations Limit is exhausted by the payment of judgments or settlements, we will have no obligation with respect to any existing or future claim or "suit" alleging injury included under the General Aggregate Limit or in the products-completed operations hazard" except as follows:

**(1)**   We will notify the first Named Insured shown in the Declarations that insurance is no longer afforded for such "injury" and will tender to the insured, or the insured's designee, such authority as we may have to supervise and control any claim or "suit" then outstanding.

**(2)**   We will be responsible only for supplementary payments which are due and payable as of the date of tendering described in paragraph (1) above

**j.   Inspections and Surveys**

We have the right but are not obligated to:

**(1)**   make inspections and surveys at any time;

**(2)**   give you reports on the conditions we find; and

**(3)**   recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

**(1)**   Are safe or healthful; or

**(2)**   Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**k.   Legal Action Against Us**

No person or organization has a right under this policy:

**(1)**   to join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)**   to sue us on this policy unless all of its terms have been fully complied with.

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**l.   Maintenance of "Underlying Insurance"**

If you fail to maintain the "underlying insurance," we will not be liable under this policy to any greater extent than we would have been liable had you complied with the obligation stated in Item 6 of the Declarations.

**m.   Other Insurance**

If other valid and collectible insurance is available to the insured for loss covered hereunder, this policy will be excess of such other insurance.  This condition does not apply to insurance purchased specifically to be either quota share with this policy or excess of this policy.

**n.   Premium**

The first Named Insured shown in the Declarations:

**(1)**   is responsible for the payment of all premiums; and

**(2)**   will be the payee for any return premiums we pay.

**o.   Premium Audit**

**(1)**   We will compute all premiums for this policy in accordance with our rules and rates.

**(2)**   Premium shown in this policy as advance premium is a deposit premium only.  At the close of each audit period, we will compute the earned premium for that period.  Audit premiums are due and payable on notice to the first Named Insured shown in the Declarations.  If the sum of the advance and audit premiums paid for this policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**(3)**   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**p.   Representations**

By accepting this policy, you agree:

**(1)**   the statements in the Declarations are accurate and complete;

**(2)**   those statements are based upon representations you made to us; and

**(3)**   we have issued this policy in reliance upon your representations.

Argonaut Great Central Insurance Company          AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**q.   Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured shown in the Declarations, this insurance applies:

**(1)**   as if each Named Insured were the only Named Insured; and

**(2)**   separately to each insured against whom claim is made or "suit" is brought.

**r.   Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Recoveries will be applied in the following order:

**(1)**   first, to reimburse any interests (including the insured) that may have paid any amounts in excess of liability under the policy;

**(2)**   then, to reimburse us for all amounts paid under the policy; and

**(3)**   finally, to reimburse all other interests (including the insured) with respect to the residue, if any.

When we have elected to participate in the exercise of the insured's right of recovery, reasonable expenses resulting therefrom will be apportioned among all interests in the ratio of their respective recoveries.

If there should be no recovery as a result of proceedings instituted solely at our request, we will bear all expenses of such proceedings.

**s.   Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of your death.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**t.   When We do not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be proof of notice.

In witness whereof, Argonaut Great Central has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of Argonaut Great Central.

President & CEO                                    Secretary

Argonaut Great Central Insurance Company          AGC-CU-032 (8-99)
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1982, 1988

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY DAMAGE EXCLUSION - PERSONAL PROPERTY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance shall not apply to "property damage" to personal property:

**(1)**   owned, rented or occupied by an insured;

**(2)**   used by an insured;

**(3)**   loaned to an insured; or

**(4)**   in the care, custody or control of an insured or as to which an insured is for any purpose exercising physical control.

AGC-CU-063 (7-97)        Argonaut Great Central Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY DAMAGE EXCLUSION - REAL PROPERTY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance shall not apply to "property damage" to real property:

**(1)**  owned, rented or occupied by an insured;

**(2)**  used by an insured;

**(3)**  loaned to an insured; or

**(4)**  in the care, custody or control of an insured or as to which an insured is for any purpose exercising physical control.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SEXUAL MISCONDUCT, SEXUAL ABUSE AND SEXUAL MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section B. Exclusions is amended to include the following:

**Sexual Misconduct, Sexual Abuse, Licentiousness or Sexual Molestation**

This insurance does not apply to any liability arising out of actual or alleged sexual misconduct, sexual abuse, licentiousness and/or sexual molestation, whether or not expected or intended, including without limitation, claims resulting from or arising out of negligent hiring, supervision, or transfer of, failure to supervise, or failure to dismiss any officer, employee or volunteer worker alleged to have committed any act of sexual misconduct, sexual abuse, licentiousness, or sexual molestation, nor do we have any duty to defend an insured in any "suit" seeking damages on account of such liability.

AGC-CU-078 (8-97)        Argonaut Great Central Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT DISCRIMINATION AND EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance does not apply to any "bodily injury," "personal injury," defense costs, fines or damages which arise out of any:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions; or

4. Consequential "bodily injury" or "personal injury" as a result of 1 through 3 above.

This exclusion applies whether an insured may be held liable as an employer or in any other capacity and to any obligation of an insured to share damages with or repay someone else who must pay damages because of the injury.

AGC-CU-083 (7-97)        Argonaut Great Central Insurance Company
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1988

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY LIMITATION ENDORSEMENT AND ERISA EXCLUSION

This endorsement modifies insurance provided by the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

This insurance is amended to include the following:

**I.**   <u>EMPLOYEE BENEFITS LIABILITY</u>:  We will pay on behalf of the insured all sums in excess of the "retained limit" that the insured becomes legally obligated to pay, in excess of the applicable limit of the underlying Employee Benefit Liability policy described in the Schedule of Underlying Insurance, as damages because of any negligent act, error or omission of the insured or of any person for whose acts the insured is legally liable. The negligent act, error or omission must be committed in the "administration" of your "employee benefits programs."

**II.**   <u>DEFINITIONS</u>:

    **a.**   "Employee Benefit Programs" means Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workers' Compensation, Unemployment Insurance, Social Security and Disability Benefits, and any other similar Benefit Program.

    **b.**   "Administration" means:

        **(1)**   Counseling "employees," including their dependents and beneficiaries, with respect to the "employee benefits programs;"

        **(2)**   Handling records in connection with the "employee benefits programs;" and

        **(3)**   Effecting or terminating any "employee's" participation in a plan included in the "employee benefit programs."

    **c.**   "Employee" means your officers, partners and employees whether actively employed, disabled or retired. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

    **d.**   Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

    **e.**   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**III.** <u>EXCLUSIONS</u>:  The insurance afforded by this endorsement shall not apply:

    **a.**    to any liability hereunder unless such liability is covered by valid and collectible underlying insurance as described in the Schedule of Underlying Insurance and then only for such hazards for which coverage is afforded under the underlying insurance.

    **b.**    to any liability arising out of any violation(s) of any provision(s) of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (commonly referred to as the Pension Reform Act of 1974) or any amendments thereto.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYERS' LIABILITY
# FOLLOWING-FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section III - Exclusions, Item e. is amended to read as follows:

**e.**   This insurance does not apply to "bodily injury" to:

**(1)**   an employee of an insured arising out of and in the course of employment by an insured; or

**(2)**   The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and then only for such liability for which coverage is afforded under the underlying insurance.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**SCHEDULE**

**Description of Professional Services:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule below, this insurance does not apply to "bodily injury," "personal injury," or "property damage" arising out of the rendering or failing to render any professional service, including but not limited to:

**(1)**  The rendering or failing to render:

    **(a)**  Medical, surgical, dental, veterinary, x-ray or nursing service or treatment, or the related furnishing of food or beverages;

    **(b)**  Any health service or treatment; or

    **(c)**  Any cosmetic, ear piercing, tonsorial, massage, physiotherapy, or chiropody service or treatment;

**(2)**  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

**(3)**  The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

COMMERCIAL UMBRELLA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CORPORAL PUNISHMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

Section III - Exclusions, Item a. is amended to read as follows:

**a.**   "Bodily injury" or "property damage" expected or intended from the standpoint of an insured.  This exclusion does not apply to "bodily injury:"

   **(1)**   resulting from the use of reasonable force to protect persons or property; or

   **(2)**   arising out of the administering of corporal punishment by or at the direction of an insured arising out of his or her teaching activities for you or on your behalf.

AGC-CU-079 (7-97)          Argonaut Great Central Insurance Company
Includes Copyrighted Material of Insurance Services Office, Inc., With Its Permission
Copyright, Insurance Services Office, Inc., 1988, 1991