IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**ARGONAUT GREAT CENTRAL INSURANCE COMPANY**                **PLAINTIFF**

v.                          CASE NO. 4:11CV00206 BSM

**JERRY CASEY et al.**                                       **DEFENDANTS**

## ORDER

Plaintiff Argonaut Great Central Insurance Company's ("Argonaut") motion for summary judgment [Doc. No. 117] is denied. Separate defendants' counterclaims for declaratory judgment [Doc. Nos. 5, 43, 50, 53, 63, 86], which have been construed as motions for summary judgment, are granted. Separate defendants' motions to prevent attorney's fees [Doc. Nos. 7, 44, 48, 54, 61, 88] are granted.

### I. BACKGROUND

On April 24, 2010, a bus owned and operated by First Baptist Church of Bentonville was involved in a single-vehicle accident near London, Arkansas. Numerous passengers were severely injured, and several died of their injuries. The church had two insurance policies with Argonaut: a business auto policy and a commercial umbrella policy.

Because the church is a charitable entity immune from suit under Arkansas law, the injured passengers and the estates of the deceased passengers have brought a direct action against Argonaut. Furthermore, all parties agree that the damages likely exceed the maximum coverage available under the insurance policies. Accordingly, Argonaut filed a complaint in interpleader naming the persons and entities who may have claims under the

policies as defendants. Defendants have answered, and separate defendants Wendy Reyna, Daisy Villedas, Renee Armando Rosales, Jorge Daniel Cerda, Aminta Ortez, and Sonia Martinez have filed counterclaims for declaratory judgment. On March 18, 2011, the parties were notified that all counterclaims would be construed as motions for summary judgment. [Doc. No. 58].

It is undisputed that defendants' damages exceed the amount of all policies. It is also undisputed that the commercial umbrella policy provides a maximum benefit of $1,000,000. The only issue is whether the business auto policy provides maximum coverage of $1,000,000 or $2,000,000. Therefore, on July 5, 2011, the parties agreed that Argonaut would deposit $2,000,000, the minimum amount to which all parties agree Argonaut owes under both policies, into the court's registry. [Doc. No. 146].

Argonaut moves for summary judgment arguing that it has paid the maximum benefit based on anti-stacking provisions in the business auto policy. Defendants contend that the anti-stacking provisions do not apply because there is only one policy and coverage form at issue. In the alternative, defendants assert that the policy language is ambiguous and that statements made by Argonaut's agent bind the company in either contract or promissory estoppel. Additionally, several defendants move to prevent an award of attorneys' fees.

## II. LEGAL STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is

entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008). Insurance contract interpretation is a question of law particularly suited for summary judgment. *Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 909 (8th Cir. 2005).

### III. DISCUSSION

Defendants' motions for summary judgment are granted and Argonaut's motion for summary judgment is denied because the plain language of the policy allows defendants to recover both the maximum liability and underinsured motorist benefits.

A.  <u>Policy Interpretation</u>

Although the business auto policy protects against several different risks of loss, only two coverages are relevant here: liability coverage and coverage for uninsured or underinsured motorists (UIM). Each coverage pays a maximum benefit of $1,000,000. The liability coverage is set forth in the business auto coverage form, and the UIM coverage is set forth in an attached endorsement. The central dispute is whether defendants may recover under both the liability and UIM coverages.

Argonaut argues that they cannot because several provisions in the policy prevent the "stacking" of coverages and double payments. Defendants contend that Argonaut is misconstruing the terms of the policy and that they are entitled to the maximum benefit of each coverage. The relevant provisions are found in both the business auto coverage form and the UIM endorsement.

1. *Duplicate Payments*

Both the business auto coverage form and the UIM endorsement contain provisions that prevent the recovery of "duplicate payments." Section II.C of the business auto coverage form is entitled "Limit of Insurance" and provides in relevant part

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting form any one "accident" in the Limit of Insurance for Liability Coverage shown in the Declarations.
> . . .
> No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

Ex. 1 to Compl., at 15. Section D.2 of the UIM endorsement is also entitled "Limit of Insurance" and similarly provides

> No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Part.

*Id.* at 33.

These provisions prevent an insured from receiving two payments for the same loss simply because two separate coverages exist. Based on the pleadings and the evidentiary record, however, no defendant seeks to "double dip" or recover duplicate damages. Instead, each defendant seeks her specific damages, which, in the aggregate, exceed the liability limit of the business auto policy. Therefore, the "Limit of Insurance" provisions are not triggered by the present claims.

2. *Other Insurance*

The UIM endorsement modifies several of the general conditions in the business auto coverage form. *Id.* Specifically, the terms set forth in the "Other Insurance" section, which is located in section IV.B.5 of the business auto coverage form, are entirely replaced by new terms set forth in the UIM endorsement. Therefore, the "Other Insurance" provision reads as follows

> If there is other applicable insurance available under one or more policies or provisions of coverage:
>
> a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.
> . . .
> c. If the coverage under this coverage form is provided:
>
> (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

*Id.*

Argonaut asserts that these provisions cap benefits at the liability limit of $1,000,000. This interpretation, however, ignores the fact that the UIM coverage is not a separate coverage form or policy, but is rather an endorsement or amendment to the business auto policy itself. The UIM rider, therefore, is not really "other insurance." Furthermore, the other sections in the UIM endorsement that interact with or modify provisions in the business auto policy strongly suggest that an insured may recover under both the liability and UIM

5

coverages. *See, e.g.*, UIM Section D.2; E.2.c; E.3.a.

### 3. *Other Coverage Forms*

Section IV.B.8 of the business auto coverage form is entitled "Two or More Coverage Forms or Policies Issued By Us" and provides in relevant part

> If this Coverage Form and any other Coverage Form or policy issued to you by us . . . apply to same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.

*Id.* at 18. As noted above, the business auto policy is one policy with one coverage form and numerous endorsements. The policy plainly provides $1,000,000 in liability insurance and $1,000,000 in uninsured or underinsured motorist insurance.

Although Argonaut's anti-stacking argument fits well in other contexts, it is inapplicable here. Indeed, the cited cases involve plaintiffs attempting to "stack" the uninsured and underinsured motorist (UIM) coverage from four *separate* policies in order to recover a larger benefit for a single accident. For example, in *Couch v. Farmers Ins. Co.*, the estate of a woman killed in a single-vehicle accident appealed the trial court's adverse grant of summary judgment. 289 S.W.3d 909, 911-12 (Ark. 2008). Importantly, the decedent in *Couch* was a named insured on four different automobile insurance policies. *Id.* at 912. The Arkansas Supreme Court held that the "other insurance" provisions prevented the estate from combining the UIM coverages from each of the separate policies. *Id.* at 913-16. Likewise, in *Whitney v. Shelter Mutual Ins. Co.*, the court held that the plaintiff could not

combine the UIM coverage from four separate automobile insurance policies and could only recover UIM benefits under one policy. 383 F. Supp. 2d 1112, 1119 (W.D. Ark. 2004).

Moreover, the Arkansas Supreme Court recently affirmed a similar interpretation of identical language. In *Philadelphia Indem. Ins. Co. v. Austin*, several passengers traveling in a bus owned and operated by nonprofit entity were severely injured or killed when the bus hit another vehicle. 2011 Ark. 283, at 2, ___ S.W.3d ___, ___. Like the church here, the nonprofit in *Austin* carried automobile liability and UIM insurance in a single policy. *Id.* at 2-3, ___ S.W.3d at ___. That policy contained a provision that is identical to the one set forth in section IV.B.8 of the business auto policy. *Id.* at 8-9, ___ S.W.3d at ___. The trial court held, and the Arkansas Supreme Court affirmed, that the provision did not operate to limit recovery to either the liability or the UIM coverage because those coverages were part of one single coverage form. *Id.* at 9, ___ S.W.3d at ___. Like *Couch* and *Whitney*, *Austin* affirms the principle that the anti-stacking language at issue applies only to multiple-policy or multiple-coverage-form contexts. *See id.*

B.     Alternative Arguments

Having found in their favor as to policy interpretation, defendants' ambiguity, modification, and promissory estoppel arguments need not be addressed.

IV. ATTORNEYS' FEES

Defendants' motions to prevent an award of attorney fees to Argonaut are granted. Defendants contend that an award of attorneys' fees is inappropriate because

Argonaut is not a disinterested stakeholder but is in fact acting out self-interest. It further argues that a discretionary award of fees pursurant to Federal Rule of Civil Procedure 22 would be inequitable. Argonaut agrees that a fee award is entirely discretionary and governed by equitable considerations.

Defendants' position is well taken. Unlike the traditional interpleader context in which a disinterested party holds a stake to which there are competing claims, Argonaut is actually an adverse party in this litigation. As noted above, because the church enjoys charitable immunity, the injured passengers and their estates have brought suit directly against Argonaut. As demonstrated by its pleadings and filings, Argonaut certainly has more than a mere stake in the proceeds; indeed, the ultimate question raised by the pending motions was whether it was liable for $2,000,000 or $3,000,000.

Furthermore, the equities do not weigh in favor of awarding Argonaut its attorneys' fees. This dispute arose out what appears to have been a gruesome accident. Even after accounting for the extra $1,000,000 in UIM proceeds, all parties concede that the defendants' damages exceed the available funds. To deplete this amount further by carving out attorneys' fees would create an additional and unnecessary hardship for the injured passengers and their estates. Accordingly, separate defendants' motions to prevent an award of attorneys' fees are granted.

V. CONCLUSION

It is therefore ordered that Argonaut's motion for summary judgment [Doc. No. 117]

is denied; separate defendants' motions for summary judgment [Doc. Nos. 5, 43, 50, 53, 63, 86] are granted; and separate defendants' motions to prevent an award of attorneys' fees [Doc. Nos. 7, 44, 48, 54, 61, 88] are granted.

Accordingly, Argonaut Great Central Insurance Company is hereby directed to pay the sum of $1,000,000 into the registry of the United States District Court for the Eastern District of Arkansas. The funds are to be deposited along with Argonaut's previous deposit of $2,000,000 [Doc. No. 146] in an interest-bearing account to be divided by the injured passengers and their estates upon the ultimate disposition by further order. The clerk's office may deduct ten percent of the income earned on the investment as a fee pursuant to local rule. Argonaut Great Central Insurance Company shall be discharged from any further liability to the extent of the $3,000,000 paid into the registry.

IT IS SO ORDERED this 8th day of December 2011.

*[Signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE